**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KIMMA ROCK *as Executrix of the Estate of Isabel Schick*, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff(s)*,<br><br>    v.<br><br>GREENSPOON MARDER, LLP,<br><br>        *Defendant*. | Civil Action No. 20-cv-3522<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

        This putative class action involves alleged violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*  Presently before the Court is Defendant Greenspoon Marder, LLP's ("Greenspoon") motion to dismiss the Amended Complaint (the "AC").  D.E. 13.  Plaintiff Kimma Rock, as Executrix of the Estate of Isabel Schick, filed a brief in opposition, D.E. 16, to which Defendant replied, D.E. 17.  With the Court's leave, Plaintiff also filed a sur-reply. D.E. 23.  The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons set forth below, Defendant's motion to dismiss is **DENIED in part** and **GRANTED in part**.

---

[1] Defendant's brief in support of its motion to dismiss (D.E. 13-1) will be referred to as "Def. Br."; Plaintiff's opposition (D.E. 16) will be referred to as "Plf. Opp."; Defendant's reply (D.E. 17) will be referred to as "Def. Reply," and Plaintiff's sur-reply (D.E. 23) will be referred to as "Plf. Sur-Reply".

## I.     BACKGROUND & PROCEDURAL HISTORY

Isabel Schick allegedly incurred a financial obligation to Liberty Home Equity Solutions, Inc. ("Liberty"), and Liberty "retained Celink as serving agents for the . . . obligation."[2]  AC ¶¶ 16-17, D.E. 9.  Celink then retained Greenspoon in connection with the Liberty obligation, which was in default.  *Id.* ¶¶ 18, 21.

On December 20, 2019, Plaintiff was appointed Executrix of the Estate of Isabel Schick pursuant to Letters Testamentary issued by the New Jersey Surrogate's Court.  *Id.* ¶ 15.  On February 19, 2020, Plaintiff received a debt collection letter from Greenspoon that was addressed to the "Estate of Isabel Schick" (the "Letter").  *Id.* ¶ 28, Ex. B.  Through the Letter, Greenspoon attempted to collect on the Liberty obligation.  *Id.* ¶ 27.

The Letter stated in part as follows:

> As of the date of this letter, the total amount of the debt that you owe is $128,655.61.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after the Creditor receives your check or payment. . . .
>
> 2.   Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion therefore, the debt will be assumed to be valid by the Debt Collector;
>
> 3.   If you notify the Debt Collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the Debt Collector will obtain verification of the debt or a copy of a judgment

---

[2] The factual background is taken from the AC, as well as the exhibits attached to the AC.  D.E. 9. "In reviewing a facial attack" to the Court's subject matter jurisdiction under Rule 12(b)(1), "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  When reviewing a Rule 12(b)(6) motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, Plaintiff attached two documents as exhibits to the AC, which are both referenced in the pleading.  Accordingly, the Court considers the exhibits in deciding this motion.

against you and a copy of such verification or judgment will be mailed to you by the Debt Collector; and

4. Upon your written request within the thirty-day period, the Debt Collector will provide you with the name and address of the original creditor, if different from the current creditor.

This letter contains a Fair Debt Collection Practices Act Disclosure, which is set forth above. The Disclosure contained in this letter sets forth your debt validation rights pursuant to the Fair Debt Collection Practices Act. This firm, the debt collector, may continue with collection activities and communications in its efforts to collect the debt during the 30-day debt validation period, unless you exercise your validation rights described in this Letter. One potential way to attempt to collect the debt is by commencing a lawsuit against you. Commencement of a lawsuit DOES NOT alter or abridge your debt validation rights described in this Letter. You will still be required by the court to respond to the summons within the number of days set forth in the summons, even if you exercise your validation rights after receipt of the summons.

AC ¶ 31, Ex. B.

After receiving the Letter, Plaintiff filed this putative class action alleging, in her one-count Complaint, that the Letter and Greenspoon's debt collection practices violated the FDCPA. D.E. 1. Within the one count, Plaintiff alleges multiple violations of the FDCPA, including violations of (1) 15 U.S.C. § 1692c(b) for addressing the Letter to the Estate rather than the Executor, AC ¶¶ 50-52; (2) 15 U.S.C. §§ 1692g(a)(1), 1692e(2)(A) and 1692e(10) for failing to disclose how the amount of debt was calculated or setting forth the "other charges" that could change the total amount due, *id.* ¶¶ 55-56, 76-77, 82; (3) 15 U.S.C. § 1692(g)(b) and 1692e(10) because the Letter is not clear as to how long the debt collector must cease its collection efforts if Plaintiff exercised her validation rights, *id.* ¶¶ 64-68, 83; and (4) 15 U.S.C. §§ 1692e(5) and 1692e(10) by failing to explain who "you" refers to in the Letter, *id.* ¶¶ 89-94, 96-98.

On May 12, 2020, Defendant filed a motion to dismiss, arguing that Plaintiff lacked standing and failed to state a claim. D.E. 8. Plaintiff filed the AC the following day. D.E. 9.

Defendant subsequently filed the instant motion to dismiss, seeking to dismiss the AC.  Defendant

again maintains that Plaintiff lacks standing to assert her claims and fails to state a claim.  D.E. 13.

## II.      ARTICLE III STANDING

### 1.  Legal Standard

Rule 12(b)(1) permits a motion to dismiss for lack of subject-matter jurisdiction.  In

deciding a Rule 12(b)(1) motion, a court must first determine whether the party presents a facial

or factual attack because the distinction determines how the pleading is reviewed.  A facial attack

"contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack

"asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the

jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa.

2015) (citing *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)).  Defendant

raises a facial attack here.  Thus, "the Court must consider the allegations of the complaint as true,"

much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare*

*Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11,

2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).  In addition, the

burden is on the plaintiff to prove the Court has jurisdiction. *Id.* (citing *Petruska*, 462 F.3d at 302).

Constitutional standing is a component of subject-matter jurisdiction and is properly

addressed through a Rule 12(b)(1) motion.  Article III of the Constitution limits federal court

jurisdiction to cases and controversies.  U.S. Const. art. III, § 2.  To establish Article III standing,

a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the

injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a

favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)

(quoting *Neale v. Volvo Cars of N. Am.*, *LLC*, 794 F.3d 353, 358-59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)).

## 2. Analysis

Defendant maintains that Plaintiff lacks standing because she did not suffer a concrete injury. Def. Br. at 3-7. An injury-in-fact requires a plaintiff to show she suffered an "invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). A concrete injury is one that actually exists, meaning that it is real and not abstract. A concrete injury, however, need not be tangible. *Id.* at 1548-49.

In *Spokeo, Inc. v. Robins*, the Supreme Court set forth two tests for determining whether an intangible injury could be concrete for the purposes of Article III standing. The first test is a historical comparison and asks, "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 1549. This test is invoked because the case and controversy requirement of Article III is grounded in historical practice. *Id.*

The second test looks to the judgment and instruction of Congress. In *Spokeo*, the Supreme Court determined that because Congress is "well-positioned to identify intangible harms that meet minimum Article III requirements," it may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 1549. However, the Court cautioned that a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a statutory right and authorizes the person to sue. *Id.* The *Spokeo* Court stated that a bare procedural violation does not satisfy the injury-in-fact requirement; that "Article

III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1543. Nevertheless, the Supreme Court recognized that the risk of real harm may be sufficient in some circumstances to constitute an injury-in-fact. *Id.* at 1549. In such cases, the Court explained, a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* "[A]n overwhelming majority of the courts in this district have found that various types of violations under § 1692e give rise to concrete, substantive injuries sufficient to establish Article III standing" under the congressional inquiry analysis. *Napolitano v. Ragan & Ragan*, No. 15-2732, 2017 WL 3535025, at *6 (D.N.J. Aug. 17, 2017) (collecting cases). This Court similarly concludes that Plaintiff, who also asserts claims alleging a violation of § 1692e, among other provision of the FDCPA, sufficiently alleged a concrete injury to establish Article III standing.

Greenspoon argues that Plaintiff fails to plead that she suffered from a harm that Congress intended to protect through the FDCPA or that she was even injured by the alleged FDCPA violation. Thus, Defendant continues, Plaintiff fails to satisfy the Congressional inquiry.[3] Def. Br. at 5-6. The FDCPA is intended to "eliminate abusive debt collection practices by debt collectors," and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). This includes a debtor's right to be free from false or misleading statements from debt collectors. *See* 15 U.S.C. § 1692e. Thus, the receipt of a misleading debt collection letter may constitute a concrete injury because it is the precise injury that Congress hoped to stop with the FDCPA.

In this instance, Plaintiff asserts, among other things, that the Letter was misleading in violation of Section 1692e. *See, e.g.*, AC ¶ 77 (alleging that Letter was misleading because it failed to explain the "other charges"); ¶ 83 (asserting that Letter falsely represented the period of

---

[3] Plaintiff only addresses the Congressional inquiry in her opposition brief. Thus, Plaintiff appears to concede that she lacks standing under the historical inquiry. The Court assumes, without deciding, this lack of historical basis in light of Plaintiff's apparent concession.

6

time that Defendant must stop its collection efforts); ¶ 89 (alleging that Letter was misleading because it failed to explain who "you" is in the Letter).  These allegations sufficiently allege a concrete, intangible injury.  *See, e.g.*, *Hovermale v. Immediate Credit Recovery, Inc.*, No. 15-5646, 2018 WL 6322614, at *5 (D.N.J. Dec. 3, 2018) (finding that debt collection letter with materially misleading statements about late charges constitutes a concrete injury in fact); *Napolitano*, 2017 WL 3535025, at *7 (concluding that debt collection letter that falsely implied that an attorney reviewed the case amounted to a concrete injury-in-fact); *Grubb v. Green Tree Servicing, LLC*, No. 13-7421, 2017 WL 3191521, at *5 (D.N.J. July 26, 2017) (finding that plaintiff established standing where the plaintiff alleged that a debt collection letter was false and misleading because it failed to accurately state the amount due).

In support of its argument, Defendant relies on *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020).  Def. Reply at 13-14.  In *Trichell*, the Seventh Circuit concluded that receipt of an unwanted debt collection letter that the plaintiff did not actually rely upon did not amount to a concrete injury.  *Trichell*, 964 F.3d at 999-1000.  *Trichell* is not binding authority on this Court.  Further, the Court does not find *Trichell* persuasive as it goes against the clear weight of authority in this district, which as discussed, recognizes that a plaintiff has standing to assert claims addressing violations of § 1692e.  *See, e.g.*, *Napolitano*, 2017 WL 3535025, at *6.

Defendant also contends that the "crux" of this matter is Plaintiff's claim that the Letter was improperly addressed, not that the Letter itself was misleading.  Defendant continues that the fact that the Letter was addressed to the Estate does not constitute a concrete injury.  Def. Reply at 12.  Nevertheless, the fact remains that Plaintiff asserts that the Letter was false and misleading in violation of § 1692e.  As discussed, these allegations are sufficient to find that Plaintiff facially pleads that she suffered an injury-in-fact.

Finally, Defendant argues that Plaintiff was not injured because after she received the Letter, Plaintiff paid the debt in full. Because this information is not pled in the AC, Defendant provides a "Summary Sheet" as an exhibit to its reply brief to establish that Plaintiff paid the debt. Def. Reply at 12, Ex. A. When presented with a facial challenge, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto." *Gould Elec. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Accordingly, the Court does not consider the Summary Sheet. But even assuming that Plaintiff paid the debt in full, the fact that she eventually paid the debt does not negate the fact that Plaintiff received the purportedly false and misleading Letter. Thus, as alleged, Plaintiff suffered an injury sufficient to establish standing.

In sum, Plaintiff has standing to assert her claims, and Defendant's motion to dismiss pursuant to Rule 12(b)(1) is denied. Because Plaintiff has standing, the Court turns to Defendant's arguments for dismissal pursuant to Rule 12(b)(6).

## III.   FAILURE TO STATE A CLAIM

### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district

courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true."  *Fowler*, 578 F.3d at 210.

### 2.   Analysis

The FDCPA "creates a private right of action against debt collectors who fail to comply with its provisions."  *Grubb v. Green Tree Servicing, LLC*, No 13-07421, 2014 WL 3696126, at *4 (D.N.J. July 24, 2014).  The FDCPA was enacted by Congress in 1977 with the purpose of eliminating "abusive, deceptive, and unfair debt collection practices" by debt collectors.  15 U.S.C. § 1692a.  "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes."  *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013), *overturned on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020) (*en banc*).  To that end, "[l]ender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of the least sophisticated debtor."[4] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006)).  "[A]lthough this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read

---

[4] In a footnote, Defendant seemingly contends that because Plaintiff is the executrix of her mother's estate, her fiduciary obligations somehow trump the least sophisticated debtor standard. Def. Reply at 7 n.1.  Defendant, however, provides no legal support for this argument and the Court is not aware of any FDCPA cases that do not apply the well-established least sophisticated debtor standard.

with care.'"  *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Defendant does not dispute that Plaintiff is consumer, that Defendant is a debt collector, or that Defendant was attempting to collect a debt from Plaintiff. Def. Br. at 8. Thus, the critical issue is whether any part of the Letter violated the FDCPA.

### a.  Addressing the Letter to the Estate

Plaintiff first contends that Greenspoon violated § 1692c because it addressed the Letter to the Estate of Isabel Schick, rather than to the attention of Plaintiff as the Executrix of the Estate. AC ¶¶ 50-52. Greenspoon counters that it sent the Letter to a "'proper' consumer per 15 U.S.C. § 1692c." Def. Br. at 10. In arguing that Defendant violated § 1692c by sending the Letter to the Estate, Plaintiff relies on *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012). Plf. Opp. at 16. In *Evon*, the debt collector defendant sent debt collection letters to debtors at their place of employment. *Evon*, 688 F.3d at 1025. The court determined that this practice "manifestly constitutes a violation" because the defendant "knew or could reasonably anticipate that a letter sent to a class member's employer might be opened and read by someone other than the debtor as it made its way to him/her." *Id.* Sending a debt collection letter to an individual's place of work is materially different than addressing a letter to an estate rather than an executrix. Thus, *Evon* is distinguishable.

Defendant contends that numerous courts have concluded that addressing a debt collection letter to an estate, rather than to the executor of the estate, does not violate § 1692c(b) and cites a number of cases to support its argument.  Def. Br. at 10.  While it is true that in the cases cited by Defendant the debt collector addressed a debt collection letter to an estate, none of these opinions address whether this practice violates § 1692c(b).  Accordingly, neither party provides the Court with any persuasive authority as to this issue.

As a result, the Court turns to the plain language of the statute.  Section 1692c(b) provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer[.]"  15 U.S.C. § 1692c(b).  For the purpose of § 1692c, "the term 'consumer' includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator."  15 U.S.C. § 1692c(d).

Defendant does not contest that it addressed the Letter at issue here to the Estate, rather than the Executrix.  Moreover, when Defendant sent the Letter, Plaintiff was appointed the Executrix of the Estate.  AC ¶¶ 15, 27.  Consequently, Defendant technically violated § 1692c(b) by addressing the Letter to the Estate, as an estate is not considered the consumer.[5]  15 U.S.C. § 1692c(b), (d); *see also* Statement of Policy Regarding Communications in Connection with the Collection of Decedents' Debts, 76 Fed. Reg. 44915, 44921, 2011 WL 3099776 (July 27, 2011) (FTC policy statement that disagrees with suggestion that "a letter addressed to the estate or an unnamed 'executor' or 'administrator' is sufficiently targeted at a person considered to be a

---

[5] By way of comparison, the Court notes that whether a plaintiff brings a claim as an executor or on behalf of an estate is a critical distinction.  If a matter is not properly captioned, the complaint could be dismissed for lack of standing.  *See* Fed. R. Civ. P. 17(a)(1) (explaining that a matter "must be prosecuted in the name of the real party in interest" but that an executor "may sue in their own name[] without joining the person for whose benefit the action is brought").

'consumer'').[6]  Plaintiff, therefore, states a claim as to a violation of § 1692c(b), and Defendant's motion is denied on these grounds.

### b.  "Amount of Debt" Requirement

Next, Plaintiff alleges that the Letter violated §§ 1692g and 1692e(2)(A) for failing to disclose how the amount of debt was calculated or set forth what "other charges" may be incurred. AC ¶¶ 55-56, 76-77.  Specifically, the Letter states that "[a]s the date of this letter, the total amount of the debt that you owe is $128,655.61.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater."  *Id.* ¶ 31.  Section 1692e(2)(A) prohibits debt collectors from making a "false representation of the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Section 1692g(a) requires debt collectors to include written notice of certain rights and information in the initial communication or provide written notice of the rights to the debtor within five days of the initial communication, including the amount of debt.  15 U.S.C. § 1692g(a).

In alleging that Greenspoon was required to explain how it calculated the amount due, Plaintiff relies on *Grubb v. Green Tree Servicing, LLC*.  In *Grubb*, the defendant sent two debt collection letters that listed materially different amounts that were allegedly owed by the plaintiff. *Grubb*, 2017 WL 3191521, at *1-2.  In addition, the second letter included information as to how the amount was calculated.  *Id.* at *2.  The plaintiff in *Grubb* alleged that these letters violated Sections 1692e and 1692g.  *Id.* at *3.  The court  determined that the debt collection letters were misleading and inaccurate.  In denying the defendant's summary judgment motion, the court

---

[6] The FTC enforces the FDCPA and issues guidance on how to interpret the FDCPA.  "Although the FTC's guidance 'does not have the force of law and is not entitled to deference in FDCPA cases,' [the Third Circuit] may adopt its interpretation when [the Circuit] finds its logic persuasive."  *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 281 (3d Cir. 2018) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006)).

concluded that "a debt collection letter which solely provides for the 'total due,' without providing

an explanation as to how that amount was calculated, fails to provide the least sophisticated debtor

with an adequate basis to dispute whether the alleged debt was properly calculated, and, in turn,

whether that debt should be challenged." *Id.* at *13.

Greenspoon relies in part on *Thomas v. Alltran Financial, LP*, No. 19-6618, ECF No. 22

(D.N.J. March 31, 2020) (which addressed *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, &*

*Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000)) to establish that it did not need to set forth any

calculations as to the amount due. Def. Br. at 15.  In *Miller*, the Seventh Circuit created safe harbor

language for debt collectors who were seeking to collect a debt did not have a set amount.  The

Seventh Circuit determined that debt collectors who use the language would not violate the

FDCPA's "amount of debt" requirement "provided, of course that the information he furnishes is

accurate and he does not obscure it by adding confusing or other information (or misinformation)."

*Miller*, 214 F.3d at 876.  The safe harbor language reads as follows:

> As of the date of this letter, you owe $___ [the exact amount due].  Because
> of interest, late charges, and other charges that may vary from day to day,
> the amount due on the day you pay may be greater.  Hence, if you pay the
> amount shown above, an adjustment may be necessary after we receive your
> check, in which event we will inform you before depositing the check for
> collection.  For further information, write to the undersigned or call 1-800-
> [phone number].

*Id.*  In *Thomas*, Judge Martinotti recognized that *Miller* was not binding authority.  At the same

time, Judge Martinotti appears to base his decision that a debt collection letter did not misrepresent

the debt owed in violation of § 1692e on the fact that the letter contained the safe harbor language.

*Thomas*, No. 19-6618, ECF No. 22, at *11-18.

In light of the present allegations, this Court finds *Thomas* and *Miller* more persuasive than

*Grubb* because it appears that the amount of the debt at issue could fluctuate.  This is the very issue

that was addressed in *Miller*. *Miller*, 214 F.3d at 876 (devising safe harbor language to aid debt collectors in fulfilling their duty to "state the amount of the debt in cases . . . where the amount varies from day to day"). While not yet addressed by the Third Circuit, the safe harbor language has been adopted by other courts. *See Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76 (2d Cir. 2016) (adopting the safe harbor approach set forth in *Miller*). Outside of arguing that *Miller* is not binding authority, Plaintiff here fails to meaningfully distinguish the case. Finally, unlike *Grubb*, Plaintiff did not receive conflicting debt collection letters.[7] Thus, Greenspoon utilized the Safe Harbor language in the Letter under appropriate circumstances. Plaintiff does not allege that the amount listed in the Letter is incorrect; that Greenspoon could not actually assess interest, late charges, or other charges; or that other language in the letter made the Safe Harbor language false or misleading. Consequently, this Court concludes that Defendant complied with the "amount of debt" provision of the FDCPA because it utilized the Safe Harbor language established in *Miller*. Therefore, Defendant's motion is granted on these grounds and Plaintiff's §§ 1692e(2) and 1692g claims are dismissed.

### c. Use of the Word "You"

Next, Plaintiff contends that Greenspoon violated §§ 1692e(5) and (10) because the letter used the word "you," despite the fact that Plaintiff was not individually responsible for the debt. Plaintiff alleges that the least sophisticated debtor could be led to believe that she could be personally responsible for an estate's debt. AC ¶¶ 89-100. Section 1692e(5) prohibits debt collectors from threatening to take legal action that they cannot legally take or do not intend to

---

[7] The Court notes that in *Grubb*, the defendant also argued that the letter did not violate the FDCPA's "amount of debt" provision because it followed the safe harbor language from *Miller*. *Grubb*, 2017 WL 3191521, at *12 n.6. The court in *Grubb*, however, determined that the defendant's argument was "misplaced, because the Seventh Circuit's holding . . . was conditional upon the dissemination of accurate information." *Id.*

take.  15 U.S.C. § 1692e(5).  Section 1692e(10) prevents debt collectors from "[t]he use of any false representation or deceptive means to collect or attempt to collect a debt."  15 U.S.C. § 1692e(10).

Defendant argues that its use of the word "you" was not misleading, and relies on *Kinkade v. Estate Information Services, LLC*, No. 11-4787, 2012 WL 4511397 (E.D.N.Y. 2012).  In *Kinkade*, a debt collection letter was addressed to the "Estate of Gerald C Kinkade."  *Kinkade*, 2012 WL 4511397, at *1.  The salutation of the letter itself read "Dear Family" and in the body, there were references to the family.  The letter also contained an explicit statement that "This is an attempt to collect a debt from the Estate, and not from the family personally."  *Id.*  Even though the letter was addressed to the estate, because the salutation and the body of the letter itself referred to the family, the court determined that the letter was directed towards the plaintiff, the decedent's wife, and not to the estate.  *Id.* at *6.  The Letter at issue here does not refer to Plaintiff individually or use her name, and only referred to the "Estate of Isabel Schick."  AC, Ex. B.  Thus, nothing in the Letter suggests that Plaintiff would somehow be personally responsible for the Estate's obligation.  As a result, *Kinkade* suggests that the Letter does not violate §§ 1692e(5) or (10).

However, in the *Statement of Policy Regarding Communications in Connection With the Collection of Decedent's Debts*, the FTC explained that "the information that must be disclosed to avoid deception when collectors contact individuals with the authority to pay the decedent's debts depends on the circumstances."  Statement of Policy Regarding Communications in Connection with the Collection of Decedents' Debts, 76 Fed. Reg. 44915, 44922, 2011 WL 3099776 (July 27, 2011).  The FTC provides two possible disclosures that "generally will be sufficient to prevent deception."  *Id.*  The disclosures are (1) that the collector is seeking payment from the estate's assets; and (2) that the individual could not be required to use the individual's assets to pay the

decedent's debt.  *Id.*  The Letter at issue here fails to include either disclosure.  As a result, the Court concludes that the least sophisticated debtor may be misled into believing that she was personally responsible for the debt because Greenspoon used the word "you" in the letter.  Plaintiff states a claim pursuant to §§ 1692e(5) and (10).  Defendant's motion is denied on these grounds.

### d.  Validation Notice

Finally, Plaintiff alleges that the validation notice in the Letter is unclear, in violation of Section 1692g(b).  AC ¶¶ 63-70.  Section 1692g(b) provides the following:

> If the consumer notifies the debt collector in writing within the thirty-day period, described in section (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of such verification or judgment*, . . . *is mailed to the consumer by the debt collector*.

15 U.S.C. § 1692g(b) (emphasis added).  In this instance, the Letter states in relevant part that

> [i]f you notify the Debt Collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the Debt Collector will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by the Debt Collector; . . .
>
> *This firm, the debt collector, may continue with collection activities and communications in its efforts to collect the debt during the 30-day debt validation period, unless you exercise your validation rights described in this Letter*.

AC ¶ 94.  Plaintiff alleges that through this language, the least sophisticated debtor is led to believe that by exercising her validation rights, Defendant's debt collection efforts must cease for the remainder of the 30-day period.  *Id.* ¶¶ 65-66.  But in fact, a debt collector may recommence its debt collection activities after it mails the verification.  15 U.S.C. § 1692g(b).  Defendant maintains that the Letter clearly sets forth a consumer's validation rights.  Def. Br. at 14-15.

Applying the least sophisticated debtor standard, the Court agrees with Plaintiff that the Letter does not clearly explain that Defendant could re-start its collection activities after mailing the verification, even if the initial 30-day verification period had not ended.  In fact, the only case cited by Defendant to support its argument that actually discussed ceasing collection efforts makes this very distinction.  *See, e.g.*, *Livingstone v. Haddon Point Manager, LLC*, No. 19-13412, 2020 WL 902218, at \*2 (D.N.J. Feb. 25, 2020) (referring to debt collection letter that provided that "the law requires us to suspend our efforts . . . to collect the debt until we mail the requested information to you.  Once verification is mailed, we can resume collection efforts").  The other cases cited by Defendant are distinguishable because the debt collection letters do not address how Defendant's debt collection efforts may be impacted by a debtor's decision to exercise her validation rights.  *See, e.g.*, *Gottesman v. Virtuoso Souring Grp., LLC*, 400 F. Supp. 3d 81, 89 (D.N.J. 2019); *Vedernikov v. LTD Fin. Servs, L.P.*, No. 18-15217, 2020 WL 359116, at \*3 (D.N.J. Jan. 22, 2020). Because the least sophisticated consumer may be confused as to when Defendant may re-start its debt collection efforts, the Court concludes that Plaintiff states a claim under § 1692g(b). Defendant's motion to dismiss is also denied on these grounds.

## IV.    Conclusion

Defendant's motion to dismiss (D.E. 13) is **GRANTED in part** and **DENIED in part**. Defendant's motion is **DENIED** as to its argument that this Court lacks subject-matter jurisdiction pursuant to Rule 12(b)(1).  Defendant's motion to dismiss pursuant to Rule 12(b)(6) is **GRANTED** as to Plaintiff's §§ 1692e(2) and 1692g claims and these claims are dismissed.  Defendant's motion to dismiss pursuant to Rule 12(b)(6) is otherwise **DENIED**.  With respect to the portions of the Amended Complaint that are dismissed, the dismissal is without prejudice.  Plaintiff shall have thirty (30) days to file a second amended complaint, which cures the deficiencies noted herein.  If

Plaintiff does not file an amended pleading within that time, the dismissed claims will be dismissed with prejudice.  An appropriate Order accompanies this Opinion.

Dated: January 26, 2021

_____
John Michael Vazquez, U.S.D.J.